## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JRSK, Inc. d/b/a Away, | **Civil Action No.** |
| *Plaintiff*, | |
| v. | **COMPLAINT** |
| Olivet International, Inc. | |
| Macy's, Inc., | **Jury Trial Demanded** |
| *Defendants*. | |

Plaintiff JRSK, Inc., doing business as Away ("Away" or "Plaintiff"), brings this action for damages and injunctive relief arising from trade secret misappropriation, breach of contract, trade dress infringement, false designation of origin, unfair competition, trade dress dilution and unlawful deceptive acts against Olivet International, Inc. ("Olivet") and Macy's, Inc. ("Macy's" and, together with Olivet, "Defendants"). The allegations herein are made based on personal knowledge as to Plaintiff and its own actions and interactions, and upon information and belief as to all other matters.

### NATURE OF THE ACTION

1.      This is a case about deception. Away is a well-known and successful designer, manufacturer, and retailer of luggage for the modern traveler. Olivet manufactures luggage. In August 2017, Olivet contacted Away regarding a "potential business opportunity" and invited Away to "meet and discuss opportunities to develop a partnership." Olivet wrote in its initial message to Away: "We have studied your product and are very impressed and humbled." Later, Away and Olivet entered into a nondisclosure agreement pursuant to which Away disclosed proprietary and confidential information to Olivet for the purpose of evaluating whether Olivet

could manufacture Away's polycarbonate luggage in a manner that exactly replicates Away's products that are produced by its current manufacturers.  For its part, Olivet agreed to use such information "only for its consideration internally of a business relationship or transaction between the parties, and its performance in any resulting arrangement, but not for any other purpose . . . ."

2.      Included among the proprietary and confidential information disclosed by Away to Olivet under the parties' nondisclosure agreement were details concerning Away's materials specifications, supply chain, production volume, and specific feedback concerning how to make Olivet's shell samples identical to Away's matte finish.

3.      In November 2018, after extended discussions regarding a potential partnership through which Olivet would manufacture Away's polycarbonate luggage line, Away notified Olivet that it would not be using Olivet's manufacturing facilities due to existing tariffs on suitcases and raw materials.  Away indicated it would reassess the possibility of a manufacturing relationship with Olivet in several months and offered to "regroup" with Olivet in March 2019.  Olivet responded "we understand" and indicated it would "reach back out in March."

4.      On or about January 7, 2019, Macy's began offering for sale on its website and in retail stores the Trips Luggage Collection, a line of luggage that Olivet deliberately designed to, and that does, look strikingly similar to Away's distinctive polycarbonate collection.  The Macy's website acknowledged that the "TRIPS luggage encompasses the look and quality of the most notable name brands in luggage . . . ."  Away, one of the most notable name brands in luggage, wrote to Macy's the next day, asking that Macy's remove the Trips Luggage Collection from its website and retail stores.  Macy's responded that the "the TRIPS Luggage collection you identified in your January 8, 2019 notice (the 'Accused Product') was supplied to us by Olivet International Inc. ('Olivet') . . . ."

2

5.      Away brings this action to hold Olivet accountable for its willful misappropriation of Away's trade secrets, its intentional breach of the parties' nondisclosure agreement, and its deliberate infringement of Away's trade dress for which Macy's is also liable.  Among other relief, Away seeks compensatory damages, treble damages, Defendants' profits, enhanced profits, exemplary damages, attorneys' fees, and an injunction that enjoins Olivet from, among other things, making, selling, or supplying the products in the Trips Luggage Collection, and that enjoins Macy's from advertising, offering to sell, and selling those products.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises, in part, under the federal Defend Trade Secrets Act, 18 U.S.C. § 1832, and under Section 39 of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1121, and under 28 U.S.C. § 1338.  This Court also has jurisdiction under 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

7.      This Court has personal jurisdiction over Defendants because they conduct or have conducted substantial business and have promoted the Trips Luggage Collection in the State of New York and in this District, have purposefully availed themselves of the privilege of conducting business in New York, have contracted directly with a company in New York (Away) where Olivet consented to "exclusive jurisdiction . . . in the federal and state courts located in New York City," have misappropriated trade secrets that they obtained from New York, and have harmed and continue to harm Away in this District by misappropriating Away's trade secrets and infringing Away's trade dress.

8.      Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in this District.  In addition, Olivet consented to venue in this District in its nondisclosure agreement with Away.  Venue lies in the Southern District of New York.

## PARTIES

9.      Plaintiff Away is a corporation organized and existing under the laws of Delaware, with a principal place of business at 82 Mercer St., New York, NY 10012.

10.     On information and belief Defendant Olivet is a corporation organized and existing under the laws of California, with offices at 85 Fifth Avenue, 10th Floor, New York, NY 10003, and a principal place of business at 11015 Hopkins Street, Mira Loma, CA 91752.

11.     On information and belief, Defendant Macy's is a corporation organized and existing under the laws of Delaware, with corporate offices at 151 West 34th Street, New York, NY 10001, and a principal places of business at 7 West Seventh Street, Cincinnati, OH 45202.

## FACTUAL ALLEGATIONS

### Away Luggage: The Polycarbonate Collection

12.     Based in New York City, Away sells a number of successful collections of luggage in its online store (www.awaytravel.com) and at its own retail stores in New York City, Los Angeles, San Francisco, Austin, Chicago, Boston, and London.  In the last year alone, Away luggage has been featured in approximately 2,000 stories in the press.  Away was also listed in *Forbes* magazine's 2018 list of "The Next Billion-Dollar Startups."

13.     Away's original and best-known line of luggage is its polycarbonate collection. The polycarbonate luggage is available in five sizes: "The Carry-On," "The Bigger Carry-On," "The Medium," "The Large," and the "Kids Carry-On."

4

14.     Through its significant investment of time and money, Away developed the distinctive look and feel of the products in this line (the "Away Trade Dress").  Specifically, the Away Trade Dress consists of a unique and distinctive combination and arrangement of the following elements:

a.      The polycarbonate material has a matte finish with a grainy texture in muted colors;

b.      The overall shape of the suitcase is a rounded rectangle, whether viewed from the front, the side, or the top;

c.      The surface of the suitcase has horizontal, indented ridges, which are evenly spaced and extend around the sides of the suitcase;

d.      The zipper is black and is held in place and framed by a black welt that runs around the perimeter of the suitcase;

e.      The remaining elements of the suitcase have rounded edges and are consistently featured in black, which stand out against the suitcase's colored background, highlighting their distinctiveness:

   i.      The AWAY trademark is shown on a black name plate in a small, rounded rectangular indentation;

   ii.     There are two rounded black handles in parallel on the top: one is fixed and the other telescopes;

   iii.    The same rounded black handle design is used on the side of the suitcase;

   iv.     The telescoping handle extends from a rounded black framed housing;

   v.      There is a black combination lock with rounded corners on the top of the suitcase;

   vi.     The suitcase rolls on four black wheels, which are attached to the suitcase by rounded black corners, such that the shape of the bottom of the suitcase mirrors the rounded top of the suitcase;

   vii.    On the Medium and Large models, the pegs on which the suitcase sits when rested on its side are rounded and black; and

    f.     The combination lock, the fixed handle, and the telescoping handle are centered on the top of the suitcase horizontally in parallel.

    15.     The Away Trade Dress is shown below in the following representative

photographs:



    16.     The foregoing combination and arrangement of design elements is non-functional. The Away Trade Dress does not provide Away any competitive advantage other than as a source-identifying mark and does not affect the cost or quality of the suitcases in Away's polycarbonate line.  Further, countless other suitcases have the same functional components as Away's luggage, but they are designed and arranged differently.   For example, while many suitcases have a telescoping handle, a fixed handle, a combination lock, and a zipper, there is no functional reason why those elements need to be black, rounded, and oriented in the particular way they are arranged in the Away Trade Dress.  Therefore, Defendants and other luggage manufacturers and sellers would not be put at a competitive disadvantage if they were precluded from replicating the unique and distinctive Away Trade Dress.

17.     In addition to being original and inherently distinctive, the Away Trade Dress has acquired secondary meaning.  As a result of Away's efforts at promoting and building its brand—including using a consistent and distinctive look and feel across its most popular line of products—the Away brand has become enormously popular and successful.  Away has spent millions of dollars marketing its brand and, specifically, luggage featuring its trade dress.  In the past 12 months alone, the luggage has been featured in approximately 2,000 stories in the press, many of which illustrate the Away Trade Dress, and many feature well-known celebrities along with the trade dress.  The luggage has been shown in a number of successful television shows, including *Homeland* and *Blackish.*  Away has endorsement arrangements with multiple celebrities, including NBA star Dwyane Wade.  Away's Facebook page has garnered over 90,000 "likes" and its Instagram account has 369,000 followers.  Away was recently listed in *Forbes* magazine's list of "The Next Billion-Dollar Startups 2018."  Away's polycarbonate line of suitcases bearing the Away Trade Dress has yielded over $100 million of sales in the U.S. over the past year.  As a result, consumers have come to associate Away's high-quality luggage with the Away Trade Dress and, conversely, consumers recognize the distinctive Away Trade Dress as a designation of source.

18.     The Away Trade Dress represents the enormous goodwill of Away, signifying products that are of high quality and that derive exclusively from Away.  Away places great importance on ensuring that its brand and trade dress are connected only to such high quality products originating from Away.  As such, with the rare exception of collaboration products designed and sold with a designated partner (such as Nordstrom), Away's suitcases are sold exclusively on Away's website, awaytravel.com, and in Away-operated retail stores.  Away does not license its products, wholesale or sell through any third-party retailers (subject to the exception noted above).

19.     Away will suffer irreparable harm if others are allowed to trade on Away's reputation and goodwill by offering goods that mimic the Away Trade Dress.  Unfortunately, as discussed below, that is precisely what Defendants are doing.

**Olivet Contacts Away Regarding a Potential Business Opportunity**

20.     On or about August 9, 2017, Olivet sent an unsolicited message with the subject line "Potential Business Opportunity" to help@awaytravel.com.  Scott Butler, a Vice President at Olivet, wrote: "Like Away, we manufacture luggage."  He continued: "We have studied your product and are very impressed and humbled.  I would like to to [sic] meet and discuss opportunities to develop a partnership."  Mr. Butler's message went on to address Olivet's manufacturing capabilities in Los Angeles and China.

21.     Within days, Away and Olivet engaged in discussions regarding a potential business relationship.  Preliminary discussions between Away and Olivet culminated in a factory tour of Olivet's Los Angeles facility and the execution of a nondisclosure agreement titled, "JRSK, INC. MUTUAL NONDISCLOSURE AGREEMENT" ("Agreement").  During this tour, Olivet personnel stated that Olivet had never produced a suitcase with a matte surface before.

**Olivet's Nondisclosure Agreement**

22.     The effective date of the Agreement is February 27, 2018.  The stated purpose of the Agreement was "[t]o explore the possibility of a business relationship between [Away] and [Olivet], for the purpose of **exploring a potential partnership opportunity** . . . ."  (bold emphasis in original).

23.     The Agreement defined the term "Proprietary Information" to include "all financial, business, legal and technical information of Discloser or any of its affiliates, suppliers, customers and employees (including information about research, development, operations,

marketing, transactions, regulatory affairs, discoveries, inventions, methods, processes, articles, materials, algorithms, software, specifications, designs, drawings, data, strategies, plans, prospects, know-how and ideas, whether tangible or intangible, and including all copies, abstracts, summaries, analyses and other derivatives thereof), that is marked or otherwise identified as proprietary or confidential at the time of disclosure, or that by its nature would be understood by a reasonable person to be proprietary or confidential."

24.     In the event Olivet received "Proprietary Information" from Away, Olivet agreed "to use the Proprietary Information only for its consideration internally of a business relationship or transaction between the parties, and its performance in any resulting arrangement, but not for any other purpose." Among other things, Olivet also agreed "not to copy [Away's] Proprietary Information."

25.     The Agreement also addressed potential remedies in the event of a breach or potential breach by Olivet: "Due to the unique nature of Proprietary Information, the parties agree that any breach or threatened breach of this Agreement will cause not only financial harm to [Away], but also irreparable harm for which money damages will not be an adequate remedy." Indeed, Olivet expressly agreed that, in the event of a breach or threatened breach, Away "shall be entitled, in addition to any other legal or equitable remedies, to an injunction or similar equitable relief against any such breach or threatened breach without the necessity of posting any bond."

26.     The Agreement further states: (1) that it "shall be governed by and construed in accordance with the laws of the State of New York, without regard to the conflicts of laws provisions thereof;" and (2) that "[e]xclusive jurisdiction and venue for any action arising under this Agreement shall be in the federal and state courts located in New York City, and both parties hereby consent to such jurisdiction and venue for this purpose."

## Away Discloses Proprietary Information to Olivet

27.      Under the terms of the Agreement, Away disclosed to Olivet confidential and proprietary information relating to Away's materials specifications, supply chain, and production volume.   Away also provided feedback and suggestions concerning how Olivet could modify a shell sample provided to Away.   In fact, on or about May 25, 2018, Away reviewed a sample polycarbonate shell from Olivet and provided feedback regarding how to make the sample appear more like Away's matte finish.   Upon information and belief, Olivet made changes and improvements to its sample shell in response to Away's feedback and suggestions.

## Olivet Breaches the Nondisclosure Agreement

28.      On November 12, 2018, Away notified Olivet that Away would not be partnering with Olivet.  Away explained: "With the current tariff situation for suitcases and raw material out of China, we are not able to engage new factories."   Nonetheless, Away offered to "reassess" during the first quarter of 2019 and "regroup" with Olivet in March.  Olivet responded as follows: "[W]e understand and will reach back out in March.  Happy holidays to all the folks at Away."

29.      Upon information and belief, Olivet entered into an agreement with Macy's to manufacture and supply polycarbonate luggage on an exclusive basis.  Upon information and belief, Olivet used Away's confidential, proprietary, and trade secret information—including Away's feedback about how to make the suitcase's shell look more like Away's matte finish—to design, manufacture, and supply the polycarbonate luggage for Macy's, which Macy's would later sell under the brand name "Trips Luggage Collection."

## Trips Luggage Collection

30.      Upon information and belief, after losing out on Away's business, Olivet intentionally designed a line of suitcases called the "Trips Luggage Collection" that copies the

10

look and feel of the Away Trade Dress (the "Infringing Trips Luggage").  Upon information and

belief, Olivet copied the Away Trade Dress on the Infringing Trips Luggage with the support and

active encouragement of Macy's.

31.     The images below show a side-by-side comparison of The Bigger Carry-On Away

polycarbonate suitcase and the Trips 22" Carry-On Spinner Suitcase, as shown on their respective

webpages:

| Away Luggage | Trips Luggage |
|:---:|:---:|



| Away Luggage | Trips Luggage |
|:---:|:---:|



| Away Luggage | Trips Luggage |
|:---:|:---:|
|  | |



| Away Luggage | Trips Luggage |
|---|---|

32.    The visual similarity between Away's product line and the Infringing Trips Luggage is striking because Olivet copied nearly all of the elements that make up the Away Trade Dress and combined and arranged them in a nearly-identical manner:

| Away Trade Dress | Infringing Trips Luggage |
|---|---|
| Made of polycarbonate material with a matte finish with a grainy texture in muted colors. | Made of polycarbonate material with a matte finish with a grainy texture in muted colors. |
| Shaped like a rounded rectangle, whether viewed from the front, the side or the top. | Shaped like a rounded rectangle, whether viewed from the front, the side or the top. |
| Covered with horizontal, indented ridges, which are evenly spaced and extend around the sides of the suitcase. | Covered with horizontal, indented ridges, which are evenly spaced and extend around the sides of the suitcase. |
| The zipper is black and is held in place and framed by a black welt that runs around the perimeter of the suitcase. | The zipper is black and is held in place and framed by a black welt that runs around the perimeter of the suitcase. |
| The remaining elements of the suitcase have rounded edges and are consistently featured in black, which stand out against the suitcase's colored background, including:<br><br><ul><li>The name plate on the front of the suitcase that displays the AWAY trademark;</li><li>The fixed and telescoping handles on the top of the suitcase;</li><li>The handle on the side of the suitcase;</li><li>The housing for the telescoping handle;</li><li>The combination lock on the top of the suitcase;</li><li>The suitcase's wheels, which are attached to the suitcase by rounded, black corners; and</li><li>On the Medium and Large models, the pegs on which the suitcase sits when rested on its side are rounded and black.</li></ul> | The remaining elements of the suitcase have rounded edges and are consistently featured in black, which stand out against the suitcase's colored background, including:<br><br><ul><li>The name plate on the top of the suitcase that displays the "TRIPS" name;</li><li>The fixed and telescoping handles on the top of the suitcase;</li><li>The handle on the side of the suitcase;</li><li>The housing for the telescoping handle;</li><li>The combination lock on the side of the suitcase;</li><li>The suitcase's wheels, which are attached to the suitcase by rounded, black corners; and</li><li>On the 29" Check-in Spinner model, the pegs on which the suitcase sits when rested on its side are rounded and black.</li></ul> |
| The combination lock, the fixed handle, and the telescoping handle are centered on the top of the suitcase horizontally in parallel. | The name plate, the fixed handle, and the telescoping handle are centered on the top of the suitcase horizontally in parallel. |

33.     None of the minimal changes that Olivet made to the design of the Infringing Trips Luggage would be noticeable to an ordinary consumer.  On the contrary, an ordinary consumer would be deceived into thinking that the Infringing Trips Luggage originates from, or is

authorized, sponsored, or approved by Away, or that Away and Defendants are otherwise connected or associated.  The confusion is deepened by the fact that the Infringing Trips Luggage comes in a nearly identical selection of colors as Away's polycarbonate line, albeit a more limited selection.  The Macy's website further adds to the confusion because its landing page for the Infringing Trips Luggage copies the look and feel of the Away website by using product photos that mimic those on the Away website.  Similarly, upon information and belief, Macy's employees and Olivet representatives have made comments to consumers in Macy's brick-and-mortar stores that "Trips" products are "just like Away, only cheaper" and made with identical materials.  Under these circumstances, even the most careful consumer would be confused by Defendants' unauthorized copying of the Away Trade Dress.

34.    Indeed, there is evidence that consumers have actually been deceived as a result of Defendants' infringement of the Away Trade Dress.  For example, this review on the Macy's website mistakenly refers to the Infringing Trips Luggage as "Away":

**Away**                                                                    February 12, 2019

You have to have this luggage. It is easy to use durable and lightweight, when you use this luggage you don't have to worry about it getting tossed around, the outside is hard shell and tough so you don't have to worry.

✔ Yes, I recommend this product.

35.    Another consumer who bought a "Trips" product from Macy's mistakenly contacted Away to activate her warranty, having been duped into believing that the "Trips" product she purchased from Macy's originated from Away:

Hello Caitlin,

My apologies for not emailing this photo last night. I got distracted once I got home. The message on the tag from the luggage coupled with what the lady on Macys said to me made me believe if I did not register my luggage I would void my warranty. The tag says for warranty service please go to the website. I believed if I wanted a warranty I had to go onto the website and complete a warranty request because she told me that and the tag said to go to the website for warranty service.

36.     On Delighted, a customer feedback platform, Away received the following negative

comment from a consumer who thought that Macy's was selling Away suitcases at a lower price:



37.     On the Instagram post shown below (Instagram.com/p/BtQkN_fnlH7), which was

sponsored by Olivet and/or Macy's, multiple commenters mistook the Infringing Trips Luggage

posted by "simplycyn" for an Away suitcase.  One posted that she "[t]hought this was the Away

luggage":



38.     Another commenter on that post stated that she had the "same suitcase," but her Instagram account reflects that she actually has an Away suitcase:





39.    Potential consumers were similarly confused by another Instagram post (Instagram.com/p/BtRK_x_lStj) that was also sponsored by Olivet and/or Macy's:



40.    In addition to evidencing the likelihood of confusion generated by Defendants' infringement of the Away Trade Dress, these examples of actual confusion demonstrate that the Away Trade Dress is distinctive and has acquired secondary meaning because actual and potential consumers linked the Infringing Trips Luggage to Away based solely on its similar appearance.

41.    Even if consumers figure out that the Infringing Trips Luggage products are not Away products prior to purchase, the confusion generated by Defendants' infringement of the Away Trade Dress is likely to, and has, generated initial interest in their luggage products. Further, to the extent consumers who purchase the Infringing Trips Luggage appreciate that it is not associated with Away, other potential consumers who see the Infringing Trips Luggage in public (*e.g.*, while traveling) would still be deceived by its duplication of the Away Trade Dress.

19

42.     The Infringing Trips Luggage was intended to, and does, compete with Away's polycarbonate line.  Macy's began selling the Infringing Trips Luggage on the Macy's website in January 2019.  The Infringing Trips Luggage is still being sold on the Macy's website and in Macy's brick-and-mortar stores in direct competition with Away.  Worse yet, Macy's has recently begun promoting the Infringing Trips Luggage through a television advertisement, thus even further enhancing the amount of confusion in the marketplace.

43.     Defendants' intent to deceive consumers is evident from the Macy's website.  Until recently, the website acknowledged that the "TRIPS luggage encompasses the *look* and quality of the most notable name brands in luggage . . . ."  (emphasis added).  In addition, until recently, if a consumer searched the Macy's website for "Away luggage", the search would take them to a landing page for the Infringing Trips Luggage.  Below is a screenshot of the Macy's website taken in January 2019:



44.    Defendants' design, manufacturing, marketing, offering for sale and sale of the Infringing Trips Luggage has irreparably harmed the Away Trade Dress and the Away brand and its goodwill.  This harm is compounded by the fact that the Infringing Trips Luggage is inferior in quality to Away's luggage.  In addition, Defendants' sale of the Infringing Trips Luggage has diverted sales from Away to Defendants.

**COUNT I**

**TRADE SECRET MISAPPROPRIATION**

**(AGAINST OLIVET)**

45.    Away repeats each of the allegations above as if fully set forth herein.

46.    Away's proprietary financial, product, manufacturing, marketing, business, and customer information ("Trade Secrets") are statutory trade secrets protected by the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, 1839.

47.    Away's Trade Secrets are sufficiently secret to derive economic value from not being generally known or readily ascertainable through means by other persons who could obtain economic value for their disclosure or use.

48.     Away has taken reasonable measures to protect the secrecy and confidentiality of its Trade Secrets, including by consistently requiring any parties to whom it discloses Trade Secret information to sign confidentiality and/or nondisclosure agreements.

49.    On or after May 11, 2016, the effective date of the Defend Trade Secrets Act, Olivet misappropriated Away's Trade Secrets through improper disclosure and/or use without Away's express or implied consent.

50.    Olivet intentionally misappropriated Away's Trade Secrets by, among other things, (i) obtaining the information by falsely representing that Olivet was interested in entering into a

business relationship with Away, (ii) inducing Away to share its Trade Secrets with the intention of using them to further Olivet's business dealings with third parties, including Macy's, and (iii) improperly using the Trade Secrets to design, produce, and supply products that directly compete with Away's polycarbonate luggage collection.

51.     The trade secret information misappropriated by Olivet relates to the Infringing Trips Luggage sold by Macy's, which is used in, and intended for use in, interstate and foreign commerce.

52.     As a competitor of Away, there exists a genuine and imminent threat that Olivet will continue to use Away's Trade Secrets in the course of its business dealings.

53.     Away has suffered and will suffer damages in an amount to be proven at trial as a direct result of Olivet's misappropriation of Away's Trade Secrets.

54.     Olivet's misappropriation of Away's Trade Secrets has been willful and malicious, and entitles Away to exemplary damages and an award of attorneys' fees pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(3).

55.     Away is also entitled to injunctive relief to prevent the continued misappropriation of its Trade Secrets by Olivet.  Olivet's misappropriation has caused and will cause Away to suffer substantial and irreparable harm, unless Olivet is enjoined from retaining and using Away's Trade Secrets, including by continuing to produce the Infringing Trips Luggage for Macy's.

## COUNT II

### BREACH OF CONTRACT

### (AGAINST OLIVET)

56.     Away repeats each of the allegations above as if fully set forth herein.

57.     As previously alleged herein, Olivet intentionally breached its obligations under the nondisclosure agreement with Away by using and copying Away's "Proprietary Information" for reasons other than Olivet's internal consideration of a business relationship and/or transaction with Away, including, for example, by designing, making, and supplying polycarbonate luggage products that Macy's sells under the "Trips" brand name.

58.     Away has suffered and will suffer damages in an amount to be proven at trial as a direct result of Olivet's breach of the parties' nondisclosure agreement.

59.     According to the express terms of the nondisclosure agreement, Olivet agreed that its breach of the nondisclosure agreement would result not only in financial harm to Away, but also irreparable harm for which money damages would not be an adequate remedy.

60.     According to the express terms of the nondisclosure agreement, Olivet also agreed that Away shall be entitled to injunctive or similar equitable relief against breach by Olivet without the necessity of posting any bond, in addition to any other available legal or equitable remedies. Olivet's breach of the nondisclosure agreement has caused and will cause Away to suffer substantial and irreparable harm, unless Olivet is enjoined from continuing to produce the Infringing Trips Luggage for Macy's.

### COUNT III

**FEDERAL TRADE DRESS INFRINGEMENT, FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION, 15 U.S.C. § 1125(a)**

**(AGAINST OLIVET AND MACY'S)**

61.     Away repeats each of the allegations above as if fully set forth herein.

62.     Away owns all right, title, and interest in and to the Away Trade Dress.

63.     The Away Trade Dress is non-functional and highly distinctive, and has become associated in the public mind with luggage of the highest quality and reputation finding their source

in Away.  The Away Trade Dress has acquired secondary meaning by virtue of Away's extensive advertising for its luggage products featuring the Away Trade Dress, countless social media shares of photos of those products, celebrity endorsements of those products, unsolicited media coverage of those products, and unprecedented commercial sales in the U.S. of those products.

64.    Without Away's authorization or consent, and having knowledge of Away's prior rights in the Away Trade Dress, Olivet has designed, manufactured, and distributed to Macy's products that infringe the Away Trade Dress.

65.    Without Away's authorization or consent, and having knowledge of Away's prior rights in the Away Trade Dress, Macy's has advertised, offered for sale, and sold products that infringe the Away Trade Dress to the consuming public in direct competition with Away, in or affecting interstate commerce.

66.    Upon information and belief, Defendants' conduct is willful, deliberate, and in bad faith, and undertaken with full knowledge of Away's rights and for the deliberate purpose of harming Away and its goodwill.

67.    The Infringing Trips Luggage is confusingly similar to the Away Trade Dress.  The Infringing Trips Luggage features a design that closely mimics the look and feel of the Away Trade Dress and thus causes members of the public to believe, falsely, that Defendants' Infringing Trips Luggage originates from, or is authorized, sponsored or approved by, Away, or that Away and Defendants are otherwise connected or associated.

68.    Defendants' infringement has caused, and unless enjoined, will continue to cause a likelihood of confusion and deception of members of the public—both at the point of sale and post-sale—thus causing injury to Away's brand and goodwill that are linked in consumers' minds to the Away Trade Dress.  In addition, Defendants' wrongful conduct has diverted sales and profits

from Away to defendants and caused Away other damages in an amount to be proven at trial, including Defendants' profits and Away's lost profits.

69.     Away has no adequate remedy at law.  If Defendants' infringement of the Away Trade Dress is not enjoined, Away will continue to suffer irreparable harm and injury to its goodwill and reputation.

70.     Defendants' unauthorized duplication of the Away Trade Dress thus constitutes trade dress infringement, false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

71.     Defendants' acts are exceptional within the meaning of 15 U.S.C. § 1117.

## COUNT IV

**CONTRIBUTORY FEDERAL TRADE DRESS INFRINGEMENT, FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION, 15 U.S.C. § 1125(a)**

**(AGAINST MACY'S)**

72.     Away repeats each of the allegations above as if fully set forth herein.

73.     In addition to its direct violations of 15 U.S.C. § 1125(a), Macy's is also liable for contributory trade dress infringement, false designation of origin, and unfair competition in violation of 15 U.S.C. § 1125(a).  Upon information and belief, Macy's induced Olivet to infringe the Away Trade Dress.  The Infringing Trips Luggage is marketed as being "Created for Macy's."

74.     In addition, Macy's has deliberately or recklessly disregarded Away's written warning that Olivet's design, manufacture, and sale to Macy's of the Infringing Trips Luggage constitutes infringement of the Away Trade Dress.  Macy's has, on information and belief, continued to place orders for the Infringing Trips Luggage with Olivet, and has continued to sell such products to consumers.  By selling the Infringing Trips Luggage to the consuming public, Macy's has facilitated and contributed to Olivet's infringement of the Away Trade Dress, and has

received a direct financial benefit for providing such services.  As such, Macy's is contributorily liable for Olivet's infringement of the Away Trade Dress.

75.     Away has no adequate remedy at law.  If Macy's contributory infringement of the Away Trade Dress is not enjoined, Away will continue to suffer irreparable harm and injury to its goodwill and reputation.

76.     Macy's acts are exceptional within the meaning of 15 U.S.C. § 1117.

## COUNT V

### INJURY TO BUSINESS REPUTATION
### AND TRADE DRESS DILUTION, N.Y. G.B.L. § 360-1

### (AGAINST OLIVET AND MACY'S)

77.     Away repeats each of the allegations above as if fully set forth herein.

78.     Defendants' illegal acts as set forth above have caused and will cause injury to Away by tarnishing Away's valuable reputation and diluting or blurring the distinctiveness of the Away Trade Dress in violation of New York General Business Law § 360-1.

79.     Away does not have an adequate remedy at law, and will continue to be damaged by Defendants' sale of the Infringing Trips Luggage unless this Court enjoins Defendants from such deceptive business practices.

## COUNT VI

### UNLAWFUL DECEPTIVE ACTS AND PRACTICES, N.Y. G.B.L. § 349

### (AGAINST OLIVET AND MACY'S)

80.     Away repeats each of the allegations above as if fully set forth herein.

81.     Defendants' illegal acts as set forth above constitute deceptive acts and business practices of a recurring nature and have caused and will cause injury to the public at large, as well as Away, in violation of N.Y. G.B.L. § 349.

82.     Away does not have an adequate remedy at law, and will continue to be damaged by Defendants' sale of the Infringing Trips Luggage unless this Court enjoins Defendants from such deceptive business practices.

## COUNT VII

### TRADE DRESS INFRINGEMENT AND UNFAIR COMPETITION UNDER NEW YORK COMMON LAW

### (AGAINST OLIVET AND MACY'S)

83.     Away repeats each of the allegations above as if fully set forth herein.

84.     Away has built up valuable goodwill in the Away Trade Dress.  As such, the Away Trade Dress has become associated with Away's luggage products, and has come to symbolize the reputation for quality and excellence of Away's luggage products.

85.     Defendants' wrongful use of colorable imitations of the Away Trade Dress as alleged herein is likely to deceive the public into believing falsely that their Infringing Trips Luggage originates from, or is authorized, sponsored or approved by, Away, or that Away and Defendants are otherwise connected or associated.  Defendants have unfairly competed with Away in violation of New York common law and laws of states in which Defendants have marketed and sold the Infringing Trips Luggage.

86.     Upon information and belief, such actions were taken by Defendants in a deliberate attempt to misappropriate and trade off of the goodwill and valuable reputation of Away and the Away Trade Dress.  Such action is a willful attempt by Defendants to usurp the goodwill in Away's rights to the Away Trade Dress, and constitutes unfair competition in violation of New York common law and laws of states in which Defendants have marketed and sold the Infringing Trips Luggage.

87.     As a direct and proximate result of Defendants' conduct, Away has suffered damage to its valuable Away Trade Dress, and other damages in an amount to be proved at trial.

88.     Away does not have an adequate remedy at law, and will continue to be damaged by Defendants' sale of the Infringing Trips Luggage unless this Court enjoins Defendants from such deceptive business practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Away respectfully requests that the Court enter an Order:

1.     That Olivet, its officers, members, directors, agents, servants, employees, confederates, representatives, and all persons acting in concert or participation with them, be permanently enjoined and restrained from misappropriating Away's trade secrets relating to its polycarbonate collection and related confidential and/or proprietary information (as defined in the Agreement), including by acquiring, using or disclosing such information.

2.     That Olivet be required to return to Away, or otherwise destroy, any and all documents and information in its possession containing Away's trade secrets relating to its polycarbonate collection and related confidential and/or proprietary information (as defined in the Agreement).

3.     That Defendants, their officers, members, directors, agents, servants, employees, confederates, representatives, and all persons acting in concert or participation with them, be permanently enjoined and restrained from:

    (i)  Manufacturing, importing, distributing, advertising, offering to sell or selling the Infringing Trips Luggage or any colorable imitations of the Infringing Trips Luggage;

    (ii)  Using the Away Trade Dress or any confusingly similar trade dress on luggage;

(iii)   Using the Away Trade Dress, or any confusingly similar trade dress, in connection with the advertisement, offer to sell or sale of any luggage products;

(iv)   Using any false designation of origin, or representing or suggesting directly or by implication that Defendants, or any other brands created by Defendants, or their luggage, are affiliated with, associated with, authorized by, or otherwise connected to Away, or that Defendants are authorized by Away to use the Away Trade Dress;

(v)   Engaging in any other activity constituting unfair competition with Away, or constituting infringement of the Away Trade Dress; and

(vi)   Assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs (i) through (v) above, or effecting any assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (i) through (v) above.

4.      That Defendants be required to deliver to the Court for destruction, or show proof of destruction of, any and all Infringing Trips Luggage products, and any advertising and promotional materials relating to the Infringing Trips Luggage.

5.      That Defendants be directed to file with the Court and serve on Away, within thirty (30) days after entry of a final injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

6.      That Defendants account for and pay over to Away profits realized by Defendants in connection with their marketing and sale of the Infringing Trips Luggage and their copying and infringement of the Away Trade Dress.

7.      That Away recover its actual damages.

8.      That the Court award enhanced profits and treble damages.

9.      That Away be awarded punitive damages.

10.     That Away be awarded interest, including pre-judgment interest, on the foregoing sums.

11.    That the Court deem this to be an exceptional case and that Defendants pay Away the costs of this action and Away's reasonable attorneys' fees and expenses.

12.    That the Court direct such other actions as the Court may deem just and proper to prevent the public from deriving the mistaken impression that any products or services offered, advertised, or promoted by or on behalf of Defendants are authorized by Away or related in any way to Away's products or services.

13.    That Away has such other and further relief as the Court may deem just and proper.


Dated: March 22, 2019                     Respectfully submitted,


                                          Colin Cabral
                                          PROSKAUER ROSE LLP
                                          2029 Century Park East
                                          Los Angeles, CA 90067
                                          (310) 284-5611 (telephone)
                                          (310) 557-2193 (facsimile)
                                          ccabral@proskauer.com

                                          Alexander Kaplan
                                          Jeffrey Warshafsky
                                          PROSKAUER ROSE LLP
                                          11 Times Square
                                          New York, NY 10036
                                          (212) 969-3000 (telephone)
                                          (212) 969-2900 (facsimile)
                                          akaplan@proskauer.com
                                          jwarshafsky@proskauer.com

                                          *Attorneys for Plaintiff JRSK Inc. d/b/a Away*